**In re Julien J. HOHENBERG, Debtor.**

**Allen S. BLAIR, Trustee, Plaintiff,**

**v.**

**Julien J. HOHENBERG and Sarah J. Hohenberg, Defendants.**

**Sarah J. HOHENBERG, Plaintiff,**

**v.**

**Julien J. HOHENBERG, Defendant.**

**Bankruptcy No. 91–20777 B.
Adv. Nos. 94–0123, 91–0297.**

United States Bankruptcy Court, W.D. Tennessee.

Aug. 30, 1994.

J. Alan Hanover, James B. Newsom, III, Barbara B. Lapides, Allen S. Blair, Hanover, Walsh, Jalenak & Blair, Memphis, TN, for trustee.

Bradley A. MacLean, Farris, Warfield & Kanaday, Nashville, TN, for Sarah Hohenberg.

William M. Gotten, Memphis, TN, for debtor.

Kathleen L. Caldwell, Taylor, Halliburton, Ledbetter & Caldwell, Memphis, TN, for debtor.

Julie C. Chinn, Asst. U.S. Trustee, Memphis, TN.

## MEMORANDUM OPINION ON SARAH J. HOHENBERG'S MOTION FOR SUMMARY JUDGMENT

WILLIAM H. BROWN, Bankruptcy Judge.

These two adversary proceedings were consolidated by a consent order entered May 24, 1994. Sarah J. Hohenberg has now filed a verified motion for summary judgment, with supporting memoranda, to approve a consensual marital dissolution agreement between Sarah J. Hohenberg and the debtor Julien J. Hohenberg, which motion further seeks to dismiss the adversary proceeding of the chapter 7 trustee against Sarah J. Hohenberg. The trustee has filed a verified response and memoranda. The debtor joins in the motion of Sarah J. Hohenberg seeking approval of the marital dissolution agreement and dismissal of the trustee's adversary proceeding. The proposed marital dissolution agreement is attached to Sarah Hohenberg's motion as Exhibit A.

This Court, by an August 28, 1991, order, had granted Sarah Hohenberg relief from the automatic stay to the extent such relief was necessary to allow Sarah Hohenberg to begin her divorce proceedings and to seek alimony and child support, but that order maintained the automatic stay with respect to any action to determine the equitable division of marital property. A divorce action was filed in the Circuit Court in Shelby County, Tennessee, on September 6, 1991, by the debtor.[1] In a July 10, 1992, order, this Court granted further relief from the automatic stay, including the allowance of state court adjudication and entry of judgment concerning the property interests and obligations between the debtor and Sarah Hohenberg. However, that order maintained the automatic stay with respect to enforcement of any state court judgment to the extent that it might award property of the bankruptcy estate to anyone other than the debtor. In that order, this Court also reserved the right to approve any consensual property settlement agreement between the parties that involved property of the bankruptcy estate. Upon Sarah Hohenberg's motion, the Court placed this entire consolidated adversary proceeding under seal.[2]

After arbitration, the Hohenbergs have now entered into a consensual marital dissolution agreement, which resolves all issues concerning child custody and support and reaches an agreement with respect to the parties' respective property interests and debt obligations. Before becoming effective, by its terms the marital dissolution agreement must be approved by this Court and by the Shelby County Circuit Court where the divorce action is pending.

### ISSUE

The issue before the Court in this motion is whether the bankruptcy estate includes any interest in "marital property" as that term is used in TENNESSEE CODE ANNOTATED § 36-4-121 (hereinafter "TENN.CODE ANN. §"). More specifically, the trustee contends that the debtor has claims and rights to an equitable division of "marital property" under Tennessee divorce law and that the debtor may not voluntarily surrender those claims and rights to the detriment of the bankruptcy estate. The issue presented is

---

1. The debtor's voluntary chapter 11 petition was filed on January 18, 1991.

2. By order dated October 25, 1994, the seal was modified to allow publication of this opinion.

one of first impression to this Court and to the published opinions of bankruptcy courts in Tennessee.

### DISCUSSION OF "MARITAL PROPERTY"

It is the position of Sarah Hohenberg that this marital dissolution agreement provides that she shall receive only that property that is currently owned exclusively by her; that is, property retained by her is and has been Sarah Hohenberg's "separate property," a term also found in TENN.CODE ANN. § 36–4–121. In addition, the agreement would award to Sarah Hohenberg her interest as a tenant by the entirety in certain real property and that portion of Mr. Hohenberg's interest as a tenant by the entirety that did not become a part of the bankruptcy estate. With respect to Mr. Hohenberg's survivorship interest in the real property that became a part of his bankruptcy estate, the marital dissolution agreement would award that interest to Sarah Hohenberg only in the event that the bankruptcy trustee abandons such an interest from the bankruptcy estate. Upon approval and finality of the marital dissolution agreement, Sarah Hohenberg would have no claim against the bankruptcy estate as a result of property to be awarded under the marital dissolution agreement.

As to Mr. Hohenberg, the marital dissolution agreement would award to him only property separately owned by him and which either has been acquired by Mr. Hohenberg subsequent to his bankruptcy filing or has been returned to the debtor as property exempt from the bankruptcy estate.

It is Sarah Hohenberg's position that the bankruptcy trustee has no basis to assert any claims against any property retained by or awarded to Sarah Hohenberg under the marital dissolution agreement because such property is not property of the bankruptcy estate nor does it affect the administration of this bankruptcy estate. The commencement of a bankruptcy case creates a bankruptcy estate. 11 U.S.C. § 541(a). That section of the Bankruptcy Code defines property of the estate as generally including "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Conceding that the definition of property of the bankruptcy estate is broad, Sarah Hohenberg contends for purposes of this proceeding that the statute includes only property in which the debtor had an interest as of the commencement of the bankruptcy case and, in the case of a property settlement or a divorce, that property so acquired by the debtor within 180 days of the commencement of the bankruptcy case. See 11 U.S.C. § 541(a)(5). It is the contention of Sarah Hohenberg that in negotiating the marital dissolution agreement, the parties did not attempt to deal with Mr. Hohenberg's nonexempt prebankruptcy interests in property that became part of his bankruptcy estate. Mr. Hohenberg, as debtor, was divested of his prepetition interests in property when he filed his bankruptcy petition, and those bankruptcy estate interests did not become a part of the marital estate subject to classification and equitable division in the divorce proceeding except to the extent that they were properly exempted from the bankruptcy estate or except to the extent that the nondebtor spouse might have a monetary claim against the bankruptcy estate. See *Hohenberg v. Hohenberg (In re Hohenberg)*, 143 B.R. 480, 487 (Bankr. W.D.Tenn.1992).

It is specifically Sarah Hohenberg's position that property separately owned by her at the time of the filing of this bankruptcy in 1991 was not included in the bankruptcy estate and can not become a part of the bankruptcy estate through the present adversary proceeding filed by the trustee. This consolidated adversary proceeding does not seek to avoid any transfer to Sarah Hohenberg under the various avoidance powers held by the trustee. This Court agrees with Sarah Hohenberg in this proceeding that the mere fact that a divorce was filed subsequent to the filing of the bankruptcy case does not vest any new property interest in the bankruptcy estate. Therefore, it is necessary to inquire whether Sarah Hohenberg is acquiring any property in the marital dissolution agreement that is property of the bankruptcy estate.

Of course, this is a summary judgment motion, and such a judgment is to be granted

only if it is clear "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.PROC. 56(c). The Court will grant a partial summary judgment but will deny a complete summary judgment due to unresolved issues of fact.

"Although the question of what is property of the estate under Section 541(a) is a federal question, property rights are created and defined by state law." *Cooper v. Frederes (In re Frederes)*, 141 B.R. 289, 291 (Bankr. W.D.N.Y.1992) (citing *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979)). It is necessary, therefore, to examine the controlling Tennessee law, as these parties' divorce is pending in a Tennessee circuit court. As a part of the divorce and annulment chapter of the Tennessee Code, § 36–4–121 provides the authority for the appropriate state court to equitably divide and distribute "marital property:"

**36–4–121. Distribution of marital property.**—(a)(1) In all actions for divorce or separate support and maintenance, the court having jurisdiction thereof may, upon request of either party, and prior to any determination as to whether it is appropriate to order the support and maintenance of one (1) party by the other, equitably divide, distribute or assign the marital property between the parties without regard to marital fault in proportions as the court deems just.

(2) To this end, the court shall be empowered to effectuate its decree by divesting and reinvesting title to such property and, where deemed necessary, to order a sale of such property and to order the proceeds divided between the parties.

(A) Any auction sale of property ordered pursuant to this section shall be conducted in accordance with the provisions of title 35, chapter 5.

(B) The court may order the provisions of title 35, chapter 5, to apply to any sale ordered by the court pursuant to this section.

(C) The court, in its discretion, may impose any additional conditions or procedures upon the sale of property in divorce cases as are reasonably designed to ensure that such property is sold for its fair market value.

(b) For purposes of this chapter:

(1)(A) "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date.

(B) "Marital property" includes income from, and any increase in value during the marriage, of property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation and the value of vested pension, retirement or other fringe benefit rights accrued during the period of the marriage.

(C) As used in this subsection, "substantial contribution" may include, but not be limited to, the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager, together with such other factors as the court having jurisdiction thereof may determine.

(D) Property shall be considered marital property as defined by this subsection for the sole purpose of dividing assets upon divorce and for no other purpose; and

(2) "Separate property" means:

(A) All real and personal property owned by a spouse before marriage;

(B) Property acquired in exchange for property acquired before the marriage;

(C) Income from and appreciation of property owned by a spouse before marriage except when characterized as mari-

tal property under subdivision (b)(1); and

(D) Property acquired by a spouse at any time by gift, bequest, devise or descent.

(c) In making equitable division of marital property, the court shall consider all relevant factors including:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled his or her role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party; and

(10) Such other factors as are necessary to consider the equities between the parties.

(d) The court may award the family home and household effects, or the right to live therein and use the household effects for a reasonable period, to either party, but shall give special consideration to a spouse having physical custody of a child or children of the marriage.

(e)(1) The court may impose a lien upon the marital real property assigned to a party, or upon such party's separate real property, or both, as security for the payment of child support.

(2) The court may impose a lien upon the marital real property assigned a party as security for the payment of spouse support or payment pursuant to property division.

(f)(1) If, in making equitable distribution of marital property, the court determines that the distribution of an interest in a business, corporation or profession would be contrary to law, the court may make a distributive award of money or other property in order to achieve equity between the parties. The court, in its discretion, may also make a distributive award of money or other property to supplement, facilitate or effectuate a distribution of marital property.

(2) The court may provide that any distributive award payable over a period of time be secured by a lien on specific property.

(g)(1) Nothing in this section shall be construed to prevent the affirmation, ratification and incorporation in a decree of an agreement between the parties regarding the division of property.

(2) Nothing in this section shall affect validity of an antenuptial agreement which is enforceable under § 36–3–501.

TENN.CODE ANN. § 36–4–121.

Thus, it is Tennessee, rather than bankruptcy, law that empowers an appropriate state court presiding over a divorce action to divide and distribute property held by the parties and classified by that state court as "marital property." *See* TENN.CODE ANN. § 36–4–121. That statute further defines "marital property" for purposes of the state court's classification of property of the parties prior to equitable division or distribution. TENN.CODE ANN. § 36–4–121(b)(1)(A). The statute authorizes the state court to divide only "marital property" and this is done "without regard to marital fault in proportions as the court deems just." TENN.CODE ANN. § 36–4–121(a)(1). It is therefore necessary, prior to dividing such property, that the state court classify all property of the parties as either "marital property" or as "separate property." The statute defines "marital property" to include "all real and personal

property ... acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of the complaint for divorce...." Tenn.Code Ann. § 36–4–121(b)(1)(A). Excepted from this definition is a "fraudulent conveyance in anticipation of filing [the divorce]." *Id.* Under specified conditions, "marital property" may also include "income from, and any increase in value during the marriage, of property determined to be separate property ... if each party substantially contributed to its preservation and appreciation...." Tenn.Code Ann. § 36–4–121(b)(1)(B).³ Separate property is defined as "[a]ll real and personal property owned by a spouse before marriage;" "[p]roperty acquired in exchange for property acquired before the marriage;" "[i]ncome from and appreciation of property owned by a spouse before marriage except when characterized as marital property;" and "[p]roperty acquired by spouse at any time by gift, bequest, devise, or descent." Tenn.Code Ann. § 36–4–121(b)(2).

■ This Court concludes that the classification of property as "marital property" within the meaning of the Tennessee divorce statute serves no purpose until after parties have filed a state court action for divorce and the state court exercises its jurisdiction to classify the property of the parties in connection with the granting of a divorce. This is clear from the Tennessee statute itself. Although there is no case authority in Tennessee, authority from other jurisdictions is consistent with the Court's conclusion. *In re Frederes,* 141 B.R. at 292; *Perlow v. Perlow,* 128 B.R. 412 (E.D.N.C.1991); *Goldberg v. Hilsen (Hilsen v. Hilsen),* 119 B.R. 435 (S.D.N.Y.1990); *In re Wilson,* 85 B.R. 722 (Bankr.E.D.Pa.1988); *Johnson v. Fisher (In re Fisher),* 67 B.R. 666 (Bankr.D.Colo.1986). These cases recognize that one spouse has no vested property right in "marital property," solely because it is "marital property," until there has been an "equitable distribution award" by the state court presiding over the divorce. *In re Frederes,* 141 B.R. at 292.

■ "Marital property" within the meaning of Tennessee's statute is not a preexisting property interest, and the concept has no real meaning outside of the realm of marital dissolution. The existence of the term "marital property" and its concepts do not grant the bankruptcy court any authority to divest "marital property" out of one spouse and place it into the bankruptcy estate. Bankruptcy estate property is not created as a result of a state court's post-bankruptcy classification of property as "marital property," except in the limited environment of § 541(a)(5) of the Bankruptcy Code. As Sarah Hohenberg contends, the concept of "marital property" is not in and of itself a property interest. Rather, the Tennessee statute clearly provides that "[p]roperty shall be considered marital property ... for the sole purpose of dividing assets upon divorce and for no other purpose." Tenn. Code Ann. § 36–4–121(b)(1)(D).

■ To express it in the most basic terms, after more than 180 days from a bankruptcy filing, the classification by a Tennessee state court of "marital property" does not give a bankruptcy trustee an additional basis upon which to enlarge the bankruptcy estate.

■ Recognition that the concept of "marital property" is a classification concept for purposes of allowing a state domestic relations court to equitably divide property as part of a divorce proceeding is critical to the present analysis. In this particular case, when the bankruptcy estate was fixed upon the commencement of the case, neither Mr. Hohenberg nor his subsequent chapter 7 trustee had any basis for claiming a legal or equitable interest in property separately owned by Sarah Hohenberg, unless her interests were subject to some avoidance recovery or other attack under either the Bankruptcy Code or any applicable nonbankruptcy law. Now that it appears that Sarah Hohenberg's property is subject to classification as either "separate" or "marital property" within the meaning of Tenn.Code Ann. § 36–4–121 in the divorce proceeding, the bankruptcy trustee may not bootstrap a claim against Sarah Hohenberg upon the do-

---

**3.** "Substantial contribution" is partially defined in § 36–4–121(b)(1)(C), quoted at page 491.

mestic relations "marital property" concept. Should Mr. Hohenberg acquire any interest through the divorce proceeding in Sarah Hohenberg's "separate property," Mr. Hohenberg would be acquiring those interests post-bankruptcy and well outside of the 180 days provided for under 11 U.S.C. § 541(a)(5); thus, any such interest acquired by Mr. Hohenberg would not automatically become part of his bankruptcy estate.

Both the trustee's and Sarah Hohenberg's counsel advised the Court that they were unable to find cases on point in Tennessee. However, Sarah Hohenberg relies upon *In re Frederes*, 141 B.R. 289, where that trustee demanded turnover of certain property titled in the nondebtor spouse. That trustee argued that the debtor held an interest in this property because it was "marital property" within the meaning of the New York domestic relations law. Thus, the bankruptcy trustee argued that the bankruptcy estate had an interest in the property. Looking to New York law for its decision, the *Frederes* bankruptcy court held that the debtor and the debtor's trustee had no rights in the marital property when the bankruptcy petition was filed and gained no rights as a result of a property settlement award, outside of the 180 days following the bankruptcy petition. Specifically, that court ruled that "[t]here are no vested present or contingent property rights or interests, legal or equitable, in such marital property solely because it is marital property under the New York Domestic Relations Law." *In re Frederes*, 141 B.R. at 291–92. As pointed out by Sarah Hohenberg's counsel, the applicable New York statute is similar enough to the Tennessee statute to justify a comparison of the statutes and to find the *Frederes* authority persuasive.

A district court in North Carolina held that "mere classification of separately-titled property as 'marital property' does not give one spouse an equitable title to or an interest in the separately-owned property of the other." *Halverson v. Halverson (In re Halverson)*, 151 B.R. 358, 362 (M.D.N.C.1993). *Compare In re McCulley*, 150 B.R. 358, 361 (Bankr. M.D.Pa.1993) (concluding in relation to the fee simple interest of one spouse that "the

date of entitlement to a spouse with regard to marital property is on the date the divorce is filed.").

■ In the present case, the marital dissolution agreement purports to classify and divide property between the spouses. That division does not create an interest of the bankruptcy estate in Sarah Hohenberg's property. The mere fact that the parties now propose to enter into a marital dissolution agreement is not the trigger creating a property interest. And, the trustee may not use the Tennessee "marital property" concept to attack Mrs. Hohenberg's separately owned property. In fact, this Court agrees with Sarah Hohenberg that the bankruptcy court does not acquire subject matter jurisdiction over her separately owned property merely because she is a spouse of the debtor and a participant in the proposed marital dissolution agreement. It is certainly true that the bankruptcy court has exclusive jurisdiction over property of the bankruptcy estate. 11 U.S.C. § 541; 28 U.S.C. § 1334(d). And, in connection therewith, a bankruptcy court has jurisdiction to decide whether certain property is property of the bankruptcy estate. But, as previously noted, in such decisions, the bankruptcy court typically is required to look to state law. *See White v. White (In re White)*, 851 F.2d 170, 173 (6th Cir.1988), stating: "The Bankruptcy Code does not define a debtor's interest in property; the answer to that question must be made after reference to state law."

■ In its earlier order in this proceeding, this Court had attempted to continue to exercise jurisdiction over property of the bankruptcy estate while allowing the state domestic court to classify and equitably divide the marital property under state domestic relations law. *In re Hohenberg*, 143 B.R. at 488. That is a separate issue from this Court being asked to adjudicate the rights and entitlements as between spouses when such an adjudication does not implicate the rights of creditors with respect to the debtor's property or property of the bankruptcy estate. *See Levine v. Levine (In re Levine)*, 107 B.R. 472, 474 (Bankr.S.D.N.Y. 1989). This Court expressed concern in its earlier order that the parties might consensually attempt to deprive creditors in this bankruptcy case of property that belonged to

the bankruptcy estate. As a result, this Court required that a consensual property settlement agreement be subject to approval of this Court after notice to creditors. *In re Hohenberg*, 143 B.R. at 488. However, that concern does not justify this Court now infringing upon Sarah Hohenberg's separate property rights in property that did not become property of the bankruptcy estate. As a result and as this Court acknowledged in its earlier order, if the state court makes a determination as to equitable distribution of "marital property," "the nondebtor spouse may enforce the judgment as to property not constituting the bankruptcy estate." *In re Hohenberg*, 143 B.R. at 488. The automatic stay remained in effect as to an enforcement of a state court judgment to the extent that such a judgment affected property of the bankruptcy estate. *Id.*

 It is therefore appropriate that the issue of approval of a consensual marital dissolution agreement is back before this Court. The Court understands and shares the trustee's concern that the marital dissolution agreement gives the impression that the parties have acted so as to deprive this debtor's creditors from any opportunity to share in the appreciation of certain assets titled separately in Sarah Hohenberg's name. The trustee's primary concern is with the wife's 46.5% ownership of a partnership known as SLAM, JR. It is undisputed that Mr. Hohenberg made a $42,977 gift to Mrs. Hohenberg in 1985, which she used to found SLAM, JR. Its only asset is a 90% interest in Gua Shan Limited, a Hong Kong corporation that is an international cotton trading company. According to the trustee, SLAM, JR. has appreciated since 1985 to a value in excess of $5,000,000, and it is the trustee's contention that this appreciation must be divisible "marital property" due to Mr. Hohenberg's substantial contribution to the appreciation. Whether Mr. Hohenberg made a substantial contribution and the monetary value thereof is subject to factual dispute on which no discovery has been taken. However, as discussed above and as a matter of Tennessee law, the trustee gains no property interest in Mrs. Hohenberg's 46.5% interest in SLAM, JR. as a result of its being classified as "marital property." However, there may be other theories upon which the trustee and/or

Mr. Hohenberg's creditors have a claim to SLAM, JR. or other assets titled in Sarah Hohenberg's name, and that is why the Court will not grant complete summary judgment to Mrs. Hohenberg.

The trustee's valid concern in this case is like the trustee's concern in the *Frederes* case:

The principal concern of the Trustee in bringing his motion, as expressed by him on a number of occasions including a pretrial conference, oral argument on the motion for summary judgment and in subsequent submissions to the Court, is that the State Court justices in making determinations of equitable distribution do not consider the interests of the creditors of a debtor spouse whose debts have been discharged in a pending bankruptcy proceeding. In this regard the Court notes that Section 236 of the New York Domestic Relations Law sets forth thirteen specific factors that the State Court justice in considering the circumstances of the case of the respective parties must consider in making an equitable disposition of property between the parties. Clearly these factors do not include the interests of the creditors of a debtor spouse whose debts have been discharged in a pending bankruptcy proceeding. The Trustee expresses concern that the State Court justices making equitable distribution awards in most cases would, and perhaps given their statutory direction should, completely ignore the interests of those creditors in such circumstances. The Trustee further speculates that if all marital property is not held to be property of the estate under Section 541, a trustee in circumstances such as those presented in this case will have absolutely no standing in the State Court to plead the equities of the estate and the creditors, either at the time any property settlement agreement or stipulation is to be entered into, or at the time of the entry of a divorce decree. This would be so even in a case where there are substantial marital property assets in the name of the non-debtor spouse and a portion of those assets could go to the debtor's creditors without leaving the non-debtor spouse seriously economically impacted. As pointed out by the Trustee, the debtor

**496**

spouse in such circumstances most often has no reason to promote the interests of his or her creditors. Even in such an appropriate case, the Trustee speculates that the state courts are unlikely to consider the interests of the creditors of the debtor spouse, since the applicable New York State statute only directs the justices to do equity between the parties to the matrimonial dispute not equity in general.

In the last decade there have been substantial increases in both bankruptcy filings and divorce actions. Numerous commentators have expressed the concern that these two growing areas of the law have been developing in parallel with little or no integration. Often, as in this case, rights and interests of various parties are directly or indirectly involved in both proceedings, but neither legislative body appears to have fully taken into account the ramifications and impact of one proceeding on the other or the overlapping rights and interests of the various parties involved. Creditors, trustees, attorneys, both commercial and matrimonial, and the courts would welcome clear legislative guidance on the respective rights and priorities of the parties to matrimonial actions and their creditors.

141 B.R. at 292–93 (footnotes omitted).

This Court shares the view of the *Frederes* court and agrees that the solution to any clash between Tennessee domestic law and the recovery to Mr. Hohenberg's creditors is one requiring legislative action rather than judicial intervention. This Court attempted to ameliorate the creditors' concerns in this case by allowing creditor intervention in the divorce proceeding. *In re Hohenberg,* 143 B.R. at 489. If this Court fashioned the remedy now sought by the trustee in this proceeding, it would be a purely equitable action that would place this Court in the role of a Tennessee domestic relations court. All agree that the bankruptcy court should "avoid invasions into family law matters." *In re White,* 851 F.2d at 173. This Court's concern for potential harm to creditors of this estate does not justify the Court taking domestic relations jurisdiction.

### CONCLUSION

This court agrees with Sarah Hohenberg that the marital dissolution agreement does not involve or affect property of the bankruptcy estate and does not give Sarah Hohenberg a claim against the bankruptcy estate. Neither does the marital dissolution agreement provide a basis upon which the bankruptcy trustee may attack the validity of Sarah Hohenberg's ownership of her separately owned property.

■ As stated previously, the primary dispute raised by the parties is one concerning the wife's separate ownership of certain business assets. *See* Schedule 1 to marital dissolution agreement. This Court concludes that the trustee would be required to assert either an avoidance or other appropriate bankruptcy or nonbankruptcy cause of action against Sarah Hohenberg rather than attack the validity of her separate ownership of business assets on the basis that those assets are subject to division as a part of the "marital property" under Tennessee divorce law. On those business assets, such as SLAM, JR., there appears to be no dispute of the fact that they are separately titled in Sarah Hohenberg's name. As a result, the Court will grant partial summary judgment to Sarah Hohenberg on the legal issue that the bankruptcy estate acquires no property interest in Sarah Hohenberg's separately owned and titled business assets merely because that property is subject to possible classification as "marital property" under TENN.CODE ANN. § 36–4–121.

■ The Court does have some concern, there having been no presentation of proof and no opportunity for discovery, on the separate ownership of Sarah Hohenberg's personal, nonbusiness property. The marital dissolution agreement in numerical paragraph 4 provides that the parties have agreed that they have divided their personal property between themselves and that each shall thereafter have individual ownership of items of personal property, such as furniture, that is presently in their separate possession. Before the Court will grant judgment as to such personal property, it will be necessary for the parties to either present proof or to stipulate that Sarah Hohenberg's ownership of personal property, which is being divided in the marital dissolution agreement, was acquired by her prior to the filing of the

bankruptcy petition. Even with that proof or stipulation, it may be necessary to conduct a trial if there are questions of fact remaining. Therefore, the Court will deny summary judgment at this time on the issue of Sarah Hohenberg's separate ownership of personal property.

There was further concern expressed to the Court about numerical paragraph 14 of the marital dissolution agreement, which provides that the agreement is a final settlement between the parties but contains the further understanding "that the parties may, by mutual agreement, signed by both of them after their marriage has been legally and finally terminated, make such amendment to or modification of this agreement as they may choose to make." Marital dissolution agreement ¶ 14. While this option retained by the parties appears suspicious, there is no reason for this Court to question the parties' retaining the right to alter their mutual agreement if such an alteration would not impair or affect the bankruptcy estate. With the possible exception of the personal property division, reserved for adjudication by this Court pending further proof or stipulation, this Court has determined that the marital dissolution agreement does not involve property of the bankruptcy estate and does not affect the bankruptcy estate. Therefore, a later mutual alteration of the marital dissolution agreement would appear to have no effect upon the bankruptcy estate or its property. However, public and creditor perception of the fairness of the judicial system is important, and Sarah Hohenberg's counsel conceded that this portion of the marital dissolution agreement was not unchangeable. As the marital dissolution agreement may not be approved by this Court pending further proof or stipulation on the personal property aspects, the Court would urge the debtor and Sarah Hohenberg to consider deleting the objectionable portion of paragraph 14 quoted above or providing that the property division portions of the agreement may not be altered while this bankruptcy case is pending without prior approval of this Court, after notice to the trustee, creditors and parties in interest, including the United States Trustee.

Finally, it must be noted that the Court's ruling, including the partial granting of summary judgment, is made without prejudice to the trustee's or creditors' rights to file avoidance or other bankruptcy or nonbankruptcy causes of action, if appropriate, against Sarah Hohenberg.[4] The trustee may, for example, move to amend his complaint. As a result, this Court will not dismiss this consolidated adversary proceeding against either Sarah Hohenberg or the debtor.

Moreover, as a result of an April 20, 1994, order of remand from Judge Odell Horton of the United States District Court, the automatic stay is still in effect preventing the state court from taking further action in the pending divorce.

A separate order will be entered granting partial summary judgment and denying the remainder of the summary judgment and dismissal motion.

---

4. For example, it is possible that a transfer to Sarah Hohenberg may occur upon ultimate entry of a marital dissolution agreement in the state court and that a creditor's avoidance cause of action may then accrue under Tennessee law.