FILED
11/14/2019
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 16, 2019 Session

## JOHN THOMAS AMMONS v. WILLIAM C. LONGWORTH, ET AL.

Appeal from the Chancery Court for Knox County
No. 178387-3        Michael W. Moyers, Chancellor

_____

### No. E2018-01004-COA-R3-CV

_____

This appeal involves many attempts to secure repayment of a loan. After the most recent hearing, the trial court denied the plaintiff's request to revisit the prior rulings. We affirm as modified.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed as Modified; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Donald K. Vowell and Douglas L. Dunn, Knoxville, Tennessee, for the appellant, John Thomas Ammons.

Ray H. Jenkins, Knoxville, Tennessee, for the appellees, William C. Longworth and Tamara Longworth.

## OPINION

### I. BACKGROUND

William C. Longworth and his wife, Tamara Longworth ("the Longworths"), began construction of a new home in the late 2000s, just when the economic decline began, despite the warnings of Mrs. Longworth's father, John Thomas Ammons. In 2009, Mrs. Longworth informed her father that the individuals under contract to purchase the Longworths' old house, located on Wilnoty Drive in Knoxville, had backed out. She sobbed that she and her husband "were going to lose everything," as the new house was complete and the construction loan was due. Mr. Ammons's understanding was that if the

couple was unable to pay the construction loan, they were going to lose the new house. He told his daughter that he "would loan them the money with the stipulation that when the [old] house did sell, that they would repay the loan at that time. . . ." Mrs. Longworth immediately accepted the offer and told her father that "when the house sold that they would repay [him] and how grateful they were, how thankful they were." Mr. Ammons testified that, at that time, he had no doubt he would be repaid. On January 6, 2009, Mr. Ammons obtained a check from Y-12 Federal Credit Union in the amount of $193,000. The bank teller, who had known him for years, expressed her concern that he was "lending such a large sum of money without additional paperwork," but Mr. Ammons replied, "[N]o, she's my daughter and she promised she'll pay me back as soon as the old house sells."

Three days later, Mrs. Longworth requested that her father sign a "gift letter" that certified to the Longworths' lender that he had "given or will give the sum of $193,000 as a gift to William C. Longworth towards the purchase of the property located at 1619 Nicholas View Ln, Knoxville TN." According to Mr. Ammons, at the time he signed the "gift letter," Mrs. Longworth "reiterated quite strongly how they knew that they were borrowing money from me, that they would pay me back, pay the entire loan when the house sold, and made it very clear that this was to satisfy the lending institution." Mr. Ammons testified that he did not feel he was doing anything improper because there were no monthly payments on the loan; rather, the agreement was that the money would be repaid once the old house sold. The money borrowed from Mr. Ammons was used to pay off the Wilnoty Drive home, automobiles, and credit cards in order for the Longworths to "have a clear slate to qualify for the loan on their new home."

The Wilnoty Drive home, however, did not sell. Mr. Ammons soon urged his daughter to "get the home cleaned up, cleaned out, and get it on the market to rent" in order to "[a]t least get some money coming in." After Mr. Ammons helped the Longworths prepare the house, it was rented to a couple from California. Despite Mr. Ammons requesting that the rent money come to him in an escrow account until the house sold, by July 2009, the Longworths had not made any payments to him, even though by that time they had been receiving rent payments in the amount of $1250 for several months. One day when his daughter was visiting at his home, Mr. Ammons brought up the subject of payment. Mrs. Longworth got very upset and left with her children.[1] After Mr. Ammons called Mr. Longworth and left a message, his son-in-law returned the call and offered to pay $600 out of the $1250 per month that the Longworths were receiving for rent. But nothing was ever paid. According to Mr. Ammons, he was never again able to reach either one of the Longworths by telephone. However, Mrs. Longworth wrote her father a letter: "As far as the money — we still intend to pay you back as we agreed to do in the beginning. WE have never wavered on the deal that was

---

[1] Mrs. Longworth told a witness present: "I don't know why my dad doesn't just give us the money. It was going to be my inheritance anyway."

- 2 -

made. . . . We are aware that we owe you the money." (Emphasis in original.).

It appears that the Wilnoty house continued to remain off the market as a rental property. Mrs. Longworth asserted that the couple had lined up a buyer for the house for $185,000, but that her father rejected the sale. She also claimed that Mr. Ammons was offered the deed to the property but refused to accept it. Mr. Ammons rejected both of these contentions. When Mr. Ammons's attorney sought a quitclaim deed to the property, the Longworths' attorney challenged Mr. Ammons to produce a signed contract that he was owed any money.

On August 4, 2010, Mr. Ammons filed a complaint against the Longworths in which he alleged that he had loaned them $193,000 but feared that they would refuse to pay him. The complaint asserted that the Longworths had acknowledged the debt. In his request for relief, Mr. Ammons asked for judgment in the amount of $193,000, a "judgment lien," and general relief. In their answer, the Longworths denied any agreement to repay or that they owed Mr. Ammons any money.

The case proceeded to trial on September 2, 2011. In the memorandum opinion, the trial court held that Mr. Ammons had loaned his daughter $193,000 and that both father and daughter "understood this to be a loan[.]" The court stated that "Mrs. Longworth, you have been unjustly enriched if that money is not returned to Mr. Ammons." The court further found that Mrs. Longworth "acknowledges that this was the debt, acknowledges that she had agreed to repay it and that it would be repaid." The court held that "a judgment against Mrs. Longworth should go down in the amount of $193,000, secured by a judgment lien against the Wilnoty Drive house." As to Mr. Longworth, the court found that Mr. Ammons had "not proved [his] case, and the case against Mr. Longworth is dismissed." The trial court added: "I'm not today going to order a sale of that house. I'll let the parties try to work that out, how that it will be executed upon or sold[.]" The court asserted, "So, the $193,000 is solely [owed] by a judgment lien against the Wilnoty Drive house, and I'll let you counsel decide how you're going to enforce that judgment lien. . . ."

After the court announced the decision, counsel for the Longworths inquired as follows:

> Mr. Jenkins: Your Honor, for clarification, how is this done? Does this affect Mr. Longworth —
>
> The Court: Good question. I'll let you guys work that out.
>
> Mr. Jenkins: — about the ownership
>
> The Court: That gets into questions of tenancy by the

- 3 -

entireties and a whole lot of other questions that I know I'm not ready, willing or able to answer today. When we get to the point of — if the Court has to intervene further, to figure out how to enforce this judgment money, we'll take that up at that time.

Right now, I'm saying there's $193,000 judgment against Mrs. Longworth that's secured by her interest in the home. Whether that's an un[divided] interest or half interest, I don't know. I'll let you guys work that out, or we'll take that up another day, all right?

A motion to alter or amend the judgment, filed by Mr. Ammons, that asked the court to grant judgment against Mr. Longworth because he also had been unjustly enriched was overruled on March 9, 2012.

In August 2016, Mr. Ammons sought the sale of Mrs. Longworth's interest in the Wilnoty Drive property. The Longworths responded as follows:

Mr. Longworth owned the Wilnoty Drive property prior to and at the time of marriage. He continues to be the sole owner listed on the Deed on file in the Register's office. At no time has Mrs. Longworth been on the Deed for Wilnoty.

They further asserted:

Assuming that Mrs. Longworth does have an ownership interest in Wilnoty property, that interest is as a Tennent by the Entirety [sic] and the Plaintiff's proper and equitable remedy is to hope the Longworths divorce or to wait for Mr. Longworth to "shuffle off this mortal coil," thereby separating his tenancy ownership interest in the property from Mrs. Longworth.

At a hearing on October 25, 2016, counsel for the Longworths argued that the trial court had held that "Ms. Longworth was solely responsible for the repayment of the loan . . . secured by her interest in the Wilnoty home." Counsel then stated as follows:

Mr. Jenkins: And the Longworths owned the home as tenants by the entirety. And there's really only two ways to get her interest without disrupting his interest, and that's if they divorce or if he dies before she does. . . . You had the opportunity to address the difficulty in Mr. Ammons securing

- 4 -

or executing his judgment in a motion to rehear. And you dismissed that motion without comment on any of the specifics in Mr. Ammons's motion, so I don't think there's a way to separate their ownership interest in a way that does not disturb Mr. Longworth's ownership interest in the home.

In response, counsel for Mr. Ammons informed the court as follows:

> Mr. Dunn: Well, I'll go right to the fundamental issue. This is not a tenancy by the entirety. . . . This property was at all times in the name of Mr. Longworth. That may or may not have been clear in the evidence at the trial of this case. . . . But the Court clearly indicated that [Mrs. Longworth] had an equitable interest in this property, because of the circumstances that it had been the center around which this whole loan came about. . . .

The trial court was clearly confused about Mrs. Longworth's interest in the property:

> The Court: . . . I mean, you've got two people who owned a piece of property. I don't recall, as I sit here today, how they acquired that property. . . . So I guess the question comes down to whether or not this is a tenancy by the entireties. And I don't know if I need further proof on that question. . . . Now, if there's a question regarding whether or not this is tenants in common or tenancy by the entireties, then I guess we have to look into that. But because this is a property that's owned by a husband and wife I think, in the absence of proof to the contrary, I have to assume that it was held in tenancy by the entireties. . . .
>
> ***
>
> The Court: I'm happy to hear more proof or evidence on that question. And if it is tenants in common, then you may be able to enforce your judgment; but if it's tenancy by the entirety, I think Mr. Jenkins was correct. Unless Mr. Longworth were to die or transfer the entirety of the ownership of the property to Mrs. Longworth, I don't see how you could force a sale.

The trial court then concluded: "I'm not going to deny the motion today, I'm going to

hold it in abeyance. But I'm going to let you brief what the actual ownership of the property is — whether it's entireties or whether it's joint tenancy of some sort — because I don't think we can answer the questions raised by your motion until we make that determination." The trial court further added: "So I think I'm going to hold your motion in abeyance and let you guys brief that question. And if necessary, we'll take some evidence on it." The order that followed deferred ruling to allow counsel time to file additional authority and argument.

Mr. Ammons thereafter filed an execution and garnishment against Mrs. Longworth's employer, Knoxville Fine Homes Realty. In a motion to quash, the Longworths argued that the judgment was secured "only by Mrs. Longworth's interest in the property on Wilnoty Drive. . . ." They contended that by seeking "a GARNISHMENT of Mrs. Longworth's, wages, earnings, and compensation, Plaintiff is seeking to satisfy the judgement from sources other than the Wilnoty property, in direct contravention of this Court's original order." At a hearing on September 11, 2017, the trial court stated as follows:

> The Court: Perhaps I wasn't clear. Perhaps I wasn't sufficiently clear. I was just rereading it. I thought I was clear. The judgment is secured by her interest in the Wilnoty house, period. . . . My intention was to secure that debt solely and only by her interest in that property. . . . So, respectfully, I'm going to grant the quashing the garnishment and direct you to seek your recovery as this Court intended when it put down its original judgment, okay?

On January 17, 2018, Mr. Ammons filed his "Motion to Alter, Amend, Revise or Reconsider Judgments or Orders," in which he asked the court to change the previous rulings to grant an equitable lien in his favor on the Wilnoty Drive property (including Mr. Longworth's interest) or, if the equitable lien is not granted, to state that the judgment against Mrs. Longworth was an ordinary personal judgment that may be executed by any means allowed by law, including garnishment of her earnings. Mr. Ammons supported his motion by filing additional evidence as to the ownership of the Wilnoty Drive property in the form of the affidavit of title attorney James E. Bondurant, Jr., with a copy of Mr. Longworth's deed to the property attached to the affidavit:

> The title records show that . . . the fee simple title to the Wilnoty Drive property was vested solely in William C. Longworth. Tamara D. Longworth was not vested with any ownership interest in the Wilnoty Drive property. She did not have an interest as tenant by the entireties in that property nor did she have any other ownership interest in that property.

Counsel for Mr. Ammons noted that "[t]he Court's previous rulings or statements that Tamara Longworth held an estate by the entireties in the Wilnoty Drive property were incorrect and mistaken." He observed further that

> "[t]he effect of the Court's orders, as they stand now, is that the Plaintiff cannot garnish the earnings of Tamara Longworth, he cannot execute on the Nicholas View Lane property, or any property other than the Wilnoty Drive property. Since Tamara Longworth does not have any ownership interest in the Wilnoty Drive property upon which he might execute, the Plaintiff has no means of enforcing the judgment. The present orders are thus that no recovery will be allowed except out of the Wilnoty Drive property, which Ms. Longworth is not the owner of. The Court has thus given the Plaintiff an illusory judgment with a value of zero. . . .

The Longworths filed a response contending, among other things, that the original order was a final judgment that could not be changed. They also claimed that Mrs. Longworth did have some ownership interest in the Wilnoty Drive property, mentioning both the law of tenancy by the entireties and the law of marital property in a divorce case. *See* Tenn. Code Ann. § 36-4-121. Mr. Ammons argued in reply that the underlying order was not a final judgment and that "[t]he divorce statutes are extremely clear that the question of 'marital property' (whether denominated as commingling or transmutation or otherwise) is for the sole purpose of dividing assets upon divorce or legal separation and for no other purpose" and that "[t]he divorce statutes are thus completely and totally irrelevant in the case at bar." Mr. Ammons requested that the trial court allow the parties 30 days to submit any additional evidence as to Mrs. Longworth's ownership interest in the Wilnoty Drive property and to hold its decision on the motion in abeyance until the court determined what interest, if any, that Mrs. Longworth had in the Wilnoty Drive property.

Without ruling on Mr. Ammons's last-filed motion, the trial court entered an order on May 4, 2018, denying the "Motion to Alter, Amend, Revise or Reconsider." The court stated that the motion was "filed presumably pursuant to TRCP Rule 60.02," that Mr. Ammons "seeks to have the Court revise or reconsider" its October 26, 2011 ruling, that "this was a Final Order, appealable as of that day," that Rule 60 allows a motion to be filed within "a reasonable time," and that "a motion filed roughly seven and a half years after the entry of the judgment does not qualify as reasonable."

Mr. Ammons filed a notice of appeal on June 1, 2018, stating that he sought review of the order entered on or about May 4, 2018, as well as the orders entered on or about October 26, 2011, November 16, 2016, and December 20, 2017. In this court, Mr. Ammons filed a "Motion to Dismiss Appeal or to Suspend the Finality Requirement of

T.R.A.P. Rule 3 to Allow the Appeal to Proceed Without Considering Either the Question of the Finality or the Exceptions to the Finality Doctrine." By this motion, he requested that we either dismiss the appeal on grounds that the order appealed from was not a final judgment, or to suspend the finality requirement to allow the appeal to proceed even though it was not a final judgment. On September 20, 2018, we denied the motion, stating that it was "not well-taken as both the judgment entered on October 26, 2011, and the order entered on May 4, 2018, were final appealable judgments for purposes of Rule 3." We observed that "[t]he ancillary matters relating to the enforcement or collection of the judgment do not affect finality" and denied the motion.

## II. ISSUES

The issues raised by Mr. Ammons in this appeal are as follows:

> 1. Whether this court should reconsider its order entered during the pendency of this appeal, in which the court stated that the initial or original judgment in this cause was a final judgment, where that question had not yet been briefed and was not directly before the court.
>
> 2. Whether the initial or original judgment in this cause was a final judgment.
>
> 3. Whether the mere passage of time could convert a non-final judgment into a final judgment.
>
> 4. Whether the trial court was correct in calling the lien that it attempted to impose a "judgment lien."
>
> 5. Whether a trial court can create a valid enforceable lien on real estate, or against a given person's interest in real estate, without first determining whether the interest in real estate actually exists, whether the given person actually has an interest in the real estate, and whether the lien affects both of the defendants or only affects one of the defendants; and whether the judgment in which the trial court attempted to create the lien can be a final judgment before those things are determined.
>
> 6. Whether the trial court can create a valid lien on real estate without stating the legal description of the real estate that is subject to the lien, and whether the judgment attempting to

create the lien can be a final judgment before that legal description is stated.

7. Where a trial court attempts to impose a judge-created lien on real estate, or on a given person's interest in real estate, as an integral part of a judgment, whether the judgment can be a final judgment at any point before the lien has been designated with sufficient specificity as to be enforceable.

8. Whether the lien that the trial court attempted to create was a judge-created lien, rather than a statutory "judgment lien," and if so whether the judge-created lien should have been referred to as an equitable lien instead of a "judgment lien."

9. Whether the court should declare an equitable lien in favor of Mr. Ammons on certain real property known as the Wilnoty Drive property, and in particular, on the interest of Mr. Longworth in the said property.

10. Whether Mrs. Longworth has any ownership interest in the Wilnoty Drive property.

11. Whether the original judgment in this case was an ordinary personal money judgement against Mrs. Longworth, which can be executed or enforced by garnishment or any other means allowed by law.

12. If the original judgment entered in this cause was a final judgment, whether the trial court could, six years after the entry of the original judgment, add a condition to the judgment that would preclude garnishment or other means to enforce, execute or collect the judgment.

13. Whether a trial court can add a material provision to a final judgment six years after the entry of the judgment to conform to what the court now states was its "intention," when that "intention" was not stated in the original judgment.

14. Whether a judgment means what it says or what the trial court subsequently states that it intended to say.

15. If the original judgment in this cause is not a final judgment, whether the trial court has discretion, under

principles of fundamental fairness and due process, after determining that Mr. Ammons lent money to Mrs. Longworth, that Mrs. Longworth agreed and acknowledged that the money was lent, and that she had promised to repay the loan, to impose a lien against a property interest that does not exist and at the same time to prohibit Mr. Ammons from enforcing the judgment by garnishment or other means, with the result that the judgment is illusory because it grants no relief whatsoever.

16. Whether a judgment that is vague and self-contradictory in its terms can be said to be an enforceable or final judgment.

## III. STANDARD OF REVIEW

This matter was heard without a jury; therefore, our standard of review is de novo upon the record of the proceedings below with a presumption of correctness as to the trial court's factual determinations, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Cross v. City of Memphis*, 20 S.W.3d 642, 645 (Tenn. 2000). When addressing a question of law, this court reviews the trial court's decision de novo upon the record with no presumption of correctness. *ATS, Inc. v. Kent*, 27 S.W.3d 923, 924 (Tenn. Ct. App. 1998).

## IV. DISCUSSION

### a.

In the original judgment, the trial court recognized that Mr. Ammons had loaned Mrs. Longworth the money. The court found that Mrs. Longworth "acknowledges that this was the debt, acknowledges that she had agreed to repay it and that it would be repaid." The words spoken by the court seem to grant an ordinary money judgment in the amount of $193,000 and some "security" in the Wilnoty Drive property. It is a personal judgment with "security" in the Wilnoty Drive property but with no prohibition against garnishment or other means of collection.

A final judgment is "one which determines a particular cause and terminates all litigation on the same right." *Aetna Cas. & Sur. Co. v. Miller*, 491 S.W.2d 85, 86 (Tenn. 1973). It leaves "nothing else for the trial court to do." *In re Estate of Ridley*, 270 S.W.3d 37, 40 (Tenn. 2008); *Estate of Henderson*, 121 S.W.3d 643, 645 (Tenn. 2003). At the conclusion of the hearing, the trial court taxed costs and declared his ruling "the judgment of the Court." The issues left unresolved were ancillary matters relating to

collection of the judgment. The court specifically stated, "I'll let you counsel decide how you're going to enforce that judgment lien" and "[I]f the Court has to intervene further," the issue could be addressed at that time. As we stated in our order of May 4, 2018, the original judgment was a final appealable judgment and "[t]he ancillary matters relating to the enforcement or collection of the judgment do not impact finality." A trial court retains jurisdiction over some ancillary matters, such as enforcement and collection of a judgment. *See First American Trust Co. v. Franklin-Murray Dev. Co.,* 59 S.W.3d 135, 141 n. 8 (Tenn. Ct. App. 2001).

**b.**

A lien is a legal claim or charge on real or personal property used as security for the payment of some debt or obligation. *Shipley v. Metropolitan Life Ins. Co.,* 158 S.W.2d 739, 741 (Tenn. Ct. App. 1941). Persons who obtain a judgment become judgment creditors and may obtain two significantly different liens against the judgment debtor's property. The first is the judgment lien authorized by Tennessee Code Annotated section 25-5-101(b) that attaches to a judgment debtor's real property.[2] *Keep Fresh Filters, Inc. v. Reguli*, 888 S.W.2d 437, 443 (Tenn. Ct. App. 1994). The statute provides in pertinent part:

> [J]udgments and decrees . . . in any court of record . . . and . . . in any court of general sessions of this state shall be liens upon the debtor's land from the time a certified copy of the judgment or decree shall be registered in the lien book in the register's office of the county where the land is located.

Tenn. Code Ann. § 25-5-101(b)(1). "The lien of a judgment is purely statutory and depends on compliance by the judgment creditor with the provisions of Tennessee Code Annotated section 25-5-105." *Andrews v. Fifth Third Bank*, 228 S.W.3d 102, 108 (Tenn. Ct. App. 2007). A "judgment lien" is not created by declaration of the court; it is a statutory lien created by operation of law any time a party files a certified copy of any judgment in the office of the register of deeds. *See* Tenn. Code Ann. § 25-5-101.

Garnishment is "an attachment of a debt due the judgment debtor from the garnishee; and, service of the garnishment upon the garnishee is a warning to the garnishee not to pay the debt but to answer the garnishment and hold the fund subject to the orders of the Court." *Smith v. Smith*, 165 S.W.3d 285, 293 (Tenn. Ct. App. 2004). Rule 69.05 of the Tennessee Rules of Civil Procedure and Tennessee Code Annotated sections 26-2-201, et seq. address the use of garnishment as a means of execution on

---

[2] The second lien is the execution lien authorized by Tennessee Code Annotated section 25-5-103 that attaches to the judgment debtor's personal property. A writ of execution is a common vehicle for enforcing money judgments. Tenn. Code Ann. § 26-1-103.

judgments. "All property, debts and effects of the defendant in the possession or under the control of the garnishee shall be liable to satisfy the plaintiff's judgment, from the service of the notice, or from the time they came into the plaintiff's hands, if acquired subsequent to the service of notice, and before judgment." Tenn. Code Ann. § 26-2-202.

The existence of an ordinary judgment would not preclude Mr. Ammons from executing on it in some other way such as by garnishment. However, when Mr. Ammons attempted garnishment, the trial court ruled that he could not enforce the judgment by that method or by any other means besides execution against Mrs. Longworth's interest in the Wilnoty Drive house.

It appears that Mrs. Longworth has no ownership interest in the Wilnoty Drive property upon which Mr. Ammons can execute. The trial court apparently was under the mistaken impression that the Longworths were in some fashion joint owners of the Wilnoty Drive property. The parties eventually submitted proof and briefing as to the ownership of the Wilnoty Drive property. Mr. Ammons proffered a copy of the deed for the property and the affidavit from a title attorney, in which the attorney opined that title to the parcel was vested solely in Mr. Longworth and that Mrs. Longworth has no interest whatsoever in the property. The Longworths confirmed that "Mr. Longworth owned the Wilnoty property prior to and at the time of the marriage," that he "continues to be the sole owner listed on the Deed. . . ." and that "[a]t no time has Mrs. Longworth been on the Deed for Wilnoty."

On appeal, the Longworths state that they treated the Wilnoty house as their marital home for ten years until they moved into their current residence. They note that they borrowed against the property at least six times, with both Mr. and Mrs. Longworth signing the trust deeds. They assert that the increase in value of the Wilnoty property was due to the substantial contributions of Mrs. Longworth as well as her husband. Counsel for the couple contends that these facts demonstrate that Mr. Longworth treated the property as a marital asset.

The law of tenancy by the entirety and divorce law are two entirely separate legal concepts. As explained by our Supreme Court:

> Under tenancy by the entirety, the husband and wife as a unit have the right to the current use and enjoyment of the property. As individuals, they each possess a right of survivorship: if one spouse dies, then the other spouse takes the property in fee simple absolute. **Each spouse may convey his or her right of survivorship without the consent of the other.** However, the husband and wife's present right to use and enjoy the property may be transferred only by consent of both the husband and the wife.

- 12 -

> **Therefore, a third party, such as a lien creditor, may own one spouse's right of survivorship without the consent of the other spouse, but a third party may not own a present possessory interest in the property without the approval of both spouses.** Accordingly, a creditor of only one spouse may execute a judgment against only that spouse's right of survivorship but not against the spouse's present possessory interest.

*Weaver v. Hamrick*, 907 S.W.2d 385, 388 (Tenn. 1995). Since the Wilnoty Drive property was in Mr. Longworth's name alone, owned by him prior to the marriage, the Longworths do not hold the Wilnoty Drive property as tenants by the entireties.

In Tennessee, the divorce statutes distinguish between separate property and marital property. Separate property is property that a spouse owns before the marriage or acquires by gift or inheritance during the marriage. Tenn. Code Ann. § 36-4-121(b). Marital property is property that is "acquired by either or both spouses during course of the marriage. . . ." *Id.* The statute specifically provides: "Property shall be considered marital property as defined by [the divorce statutes] for the sole purpose of dividing assets upon divorce or legal separation *and for no other purpose*." Tenn. Code Ann. § 36-4-121(b)(1)(E) (emphasis added). Thus, unlike tenancy by the entirety, the question of whether property is marital property does not depend upon the existence of a conveyance. To the contrary, in a divorce proceeding, property can be deemed marital property even when there is no conveyance. But, the determination that property is "marital property" is "for the sole purpose of dividing assets upon divorce or legal separation and for no other purpose." As observed in *In re Hohenberg*, 174 B.R. 487, 493 (W.D. Tenn. 1994): "[T]he classification of property as 'marital property' within the meaning of the Tennessee divorce statute serves no purpose until after parties have filed a state court action for divorce and the state court exercises its jurisdiction to classify the property of the parties in connection with the granting of a divorce." The court noted: "'Marital property' within the meaning of Tennessee's statute is not a preexisting property interest, and the concept has no real meaning outside of the realm of marital dissolution." *Id.* Accordingly, as argued by Mr. Ammons, the concept of "marital property has no place in this matter because this is not a divorce case. The fact that Mrs. Longworth might claim an interest in the Wilnoty Drive property as "marital property" if she filed for divorce does not grant a court in a non-divorce proceeding any authority to divest the Wilnoty Drive property from Mr. Longworth. For the purposes of this case, Mrs. Longworth has no interest in the Wilnoty Drive property.

We find that the original judgment in this cause constituted an ordinary personal money judgment in favor of Mr. Ammons against Mrs. Longworth in the amount of $193,000, with no prohibition against garnishment or other means of execution or enforcement of the judgment. It did not preclude garnishment. Mr. Ammons may enforce

- 13 -

the original judgment by garnishment or any other means allowed by law. *See* Tenn. Code Ann. § 25-5-101.

## V. CONCLUSION

The May 4, 2018 judgment of the trial court denying review of prior orders is affirmed as modified, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to William C. and Tamara Longworth.

_____
JOHN W. MCCLARTY, JUDGE